**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STEPHEN CHAGARES, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>MONMOUTH MEDICAL CENTER, *et al.*,<br><br>Defendants. | Civil Action No. 21-20677 (MAS) (LHG)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on two motions. First is Plaintiff Dr. Stephen Chagares's ("Dr. Chagares") Motion to Remand. (ECF No. 5.) Defendants Monmouth Medical Center ("MMC"), Monmouth Medical Center Faculty Practice Plan, Inc., Barnabas Health, RWJ Barnabas Health, Bill Arnold, Barbara Mihelic, Dr. P.H. Joseph Jaeger, Dr. Thomas Heleotis, Eric Carney, and Dr. Manpreet Kohli ("Dr. Kohli", and together "MMC Defendants") opposed Dr. Chagares's Motion (ECF No. 7), as did Defendant Dr. Negin Griffith ("Dr. Griffith" and collectively with MMC Defendants, "Defendants") in a separate submission (ECF No. 9). Dr. Chagares replied. (ECF No. 8.) Next is Griffith's Motion to Dismiss, to which the MMC Defendants joined. (ECF Nos. 11, 13.) Dr. Chagares opposed (ECF No. 14), and Defendants replied separately (ECF Nos. 15, 16). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court denies Dr. Chagares's Motion to Remand and grants Defendants' Motion to Dismiss.

I.       **BACKGROUND**

In the Spring of 2018, Dr. Chagares, a general surgeon at the Breast Center of MMC, traveled to Milan, Italy to observe the work of Dr. Antonio Toesca ("Dr. Toesca") of the European Institute of Oncology. (Notice of Removal Ex A. ("Am. Compl.") ¶¶ 1, 2, 16, 20, ECF No. 1-1.) There, Dr. Toesca trained Dr. Chagares in a surgical technology called Robotic Nipple Sparing Mastectomy ("RNSM"), a procedure used to perform mastectomies. (*Id.* ¶ 21.) Dr. Chagares's experience with Dr. Toesca and his teachings on RNSM was positive, and he reported his findings to MMC. (*Id.* ¶ 26.) Shortly after, Dr. Chagares received unanimous approval by the MMC Institutional Review Board to begin using RNSM technology. (*Id.* ¶¶ 26, 35.) Through September 2018, with MMC's approval, Dr. Chagares used the technology while operating on his patients. (*Id.* ¶¶ 39, 41.)

Not long after, MMC's Breast Center invited Dr. Chagares to take part in a post-operative peer review of RNSM technology. (*Id.* ¶ 42.) Despite initially supporting Dr. Chagares's use of RNSM technology, about a week later, MMC administrators notified Dr. Chagares that it decided that use of RNSM will be limited to non-cancer patients only, due to "safety concerns." (*Id.* ¶ 43.) Following MMC's limiting of Dr. Chagares's use of RNSM, Dr. Chagares alleges that MMC falsely portrayed medical findings surrounding the safety of RNSM technology. (*Id.* ¶ 50.) That December, the Asbury Park Press published a statement that RNSM was unsafe. (*Id.* ¶ 60.) Around the same time, MMC notified Dr. Chagares that the RNSM trials were suspended because of the alleged safety concerns. (*Id.* ¶ 57.) In February of the following year, trials were officially terminated. (*Id.* ¶ 62.) Around this time, a periodical called *The Cancer Letter* published an article alleging that Dr. Chagares's RNSM trials (1) were opposed by MMC from the outset; (2) failed to follow proper Food and Drug Administration protocols for use of the technology; and (3) failed to

receive informed consent from patients. (*Id.* ¶ 63.) As a result of *The Cancer Letter* publication, Dr. Chagares allegedly suffered disparagement of his professional career. (*Id.* ¶ 71.)

A few weeks later, the tide turned in Dr. Chagares's favor. *The Cancer Letter* published a corrected statement, this time articulating how MMC chucked Dr. Chagares "under the bus" without giving him a valid reason as to why the RNSM trials were terminated. (*Id.* ¶ 73.) On December 2, 2019, Dr. Chagares filed an action against several MMC administrators in state court. After two years and extensive discovery, Dr. Chagares then amended his complaint in December 2021 (also in state court). This amended pleading added a new Defendant, Dr. Griffith, a plastic surgeon who, according to Dr. Chagares, receives many referrals for breast cases from Dr. Kohli, another doctor employed by MMC at the Breast Center. Dr. Chagares alleges, among other claims, that Defendants violated the Sherman Antitrust Act, a federal claim, by wrongfully excluding Dr. Chagares from the breast surgery market and preventing competition that would accrue from the introduction of RNSM technology. (*Id.* ¶¶ 87-93.) With the inclusion of a federal claim, Dr. Griffith filed a Notice of Removal on December 22, 2021. (*See generally* Notice of Removal.) On January 3, 2022, Dr. Chagares filed a motion to remand. (ECF No. 5-1.) In May 2022, Dr. Griffith filed a motion to dismiss, to which the MMC Defendants joined. (ECF No. 11, 13.)

## II.   LEGAL STANDARD

### A.   Motion to Remand Standard

"Federal courts are courts of limited jurisdiction, and a case can only be removed to a federal district court if the case could have been originally filed there." *MHA LLC v. Healthfirst, Inc.*, 629 F. App'x 409, 411 (3d Cir. 2015) (citing 28 U.S.C. § 1441(a)). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Absent diversity of citizenship, federal-question jurisdiction . . . is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists

3

only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under the well-pleaded complaint rule, plaintiffs are the masters of their claim; "[they] may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

A defendant must generally file a notice of removal "within [thirty] days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). A defendant may alternatively remove a state action within thirty days of receipt or service of "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Removed cases shall be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The party initially removing the action has the burden of establishing federal jurisdiction. *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (citations omitted). This burden is heavy, since "the removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Id.*

### B.  Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 8(a)(2)[1] requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been

---

[1] Unless otherwise noted, all references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

An issue presented in this motion is antitrust standing. Article III standing and antitrust standing are "distinct" concepts. *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 269-70 (3d Cir. 2016). "Unlike Article III standing, statutory standing is not jurisdictional." *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)).

Thus, dismissal for lack of statutory standing is properly addressed as a matter of sufficiency of pleading under Rule 12(b)(6), rather than under Rule 12(b)(1). *See id.*; *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007) ("[A]ntitrust standing and Article III standing

are not one and the same, and we not only may – but we must – reject claims under Rule 12(b)(6) when antitrust standing is missing.").

### III.   <u>DISCUSSION</u>

The Court begins by addressing the Motion to Remand. Next, the Court addresses Defendants' Motion to Dismiss.

#### A.   **Motion to Remand**

Dr. Chagares argues that Dr. Griffith improperly filed a Notice of Removal because it was untimely as the thirty-day window of removal under 28 U.S.C. § 1446 had been closed for nearly two years. (Pl.'s Moving Br. 11-16, ECF No. 5-1.) The MMC Defendants and Dr. Griffith separately contend that Dr. Chagares relies on outdated and extra-jurisdictional case law that is not binding on this Court. (*See generally* MMC Opp'n Br, ECF No. 7; Griffith Opp'n Br., ECF No. 9.)

Federal courts have original jurisdiction over cases presenting federal questions. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). In the instant case, Dr. Chagares raises a claim invoking federal question jurisdiction, as he alleges a Sherman Act Antitrust claim. *See In re N.J. Title Ins. Litig.*, No. 08-1425, 2010 WL 2710570, at *3 (D.N.J. July 6, 2010). But under 28 U.S.C. § 1446, each defendant has thirty days from the date of service in which to file a notice of removal. 28 U.S.C. § 1446(b)(2)(B). Further clarifying this rule, the statute also provides that "[i]f defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(C). Known as the "last served defendant" rule, Congress amended the removal statute in 2011 to permit the last served defendant to remove the entire case within thirty days of service. *See also* Charles Alan Wright, Arthur R. Miller, Fed. Prac. & Proc. § 3731 (Rev. 4th ed.). Other defendants can jump on the

removal wagon "even if their own removal periods have expired." *Di Loreto v. Costigan*, 351 F. App'x 747, 752 (3d Cir. 2009 (quoting *Cmiech v. Electrolux Home Prods., Inc.*, 520 F. Supp. 2d 671, 676 (M.D. Pa. 2007)); *see Delalla v. Hanover Ins.*, 660 F.3d 180, 188 (3d Cir. 2011) (stating that "[a]n earlier-served defendant should not be precluded from joining in another defendant's notice simply because that defendant elected not to file a notice of removal").

With that statutory backdrop in mind, the Court finds that removal was proper. Although this action has been ongoing since 2019, Dr. Griffith was not a defendant until Dr. Chagares added him to the Amended Complaint in December 2021. (*See generally* Am. Compl.) After Dr. Griffith was served, she promptly removed to this Court. (*See* Notice of Removal.) This Court also finds all properly served defendants unanimously joined in the petition for removal within thirty days of service. (*Id.*) Unsurprisingly, courts in this District regularly apply this standard. *See Niblack v. Pettway*, No. 14-3883, 2014 WL 4953247, at *12 (D.N.J. Oct. 1, 2014) ("Regardless that the first removal by the original Defendants was remanded because they untimely removed, the new Defendants' right to removal is determined by the date they were served with the [a]mended [c]omplaint."). The Court, accordingly, denies Dr. Chagares's Motion to Remand.

## B.    Motion to Dismiss

Dr. Griffith moves to dismiss all the claims against her. (*See generally* Griffith Moving Br., ECF No. 11.) The MMC Defendants join Dr. Griffith's Motion, but solely to dismiss the Sherman Antitrust Act and New Jersey Antitrust Act claims. (*See* MMC Moving Letter, ECF No. 15.) The Court starts by addressing the federal claim.

### 1.    The Court Dismisses the Sherman Antitrust Act Claim.

Dr. Chagares argues that Defendants violated the Sherman Antitrust Act by actively trying to exclude him and the RNSM technology from the breast surgery industry. (Am. Compl. ¶¶ 87-93.) In support of this argument, Dr. Chagares blames MMC for the published articles that

7

he claims were defamatory, blasts MMC for excluding him from the physicians' referral lists, and accuses MMC of conducting a sham peer review, among other allegations. (*Id.* ¶ 92.) Defendants contend, however, that Dr. Chagares lacks standing to bring a Sherman Antitrust Act claim. (Griffith Moving Br. 18.) Because the Court concludes that Dr. Chagares lacks standing, the Court dismisses this claim.

Antitrust standing is a threshold requirement, and when a case alleging antitrust violations fails to meet this requirement, the claim must be dismissed as a matter of law. *Animal Sci. Prods. v. China Minmetals Corp.*, 34 F. Supp. 3d 465, 497 (D.N.J. 2014). To adequately plead an antitrust violation a plaintiff must allege facts that show: "(1) harm of the type the antitrust laws were intended to prevent; and (2) an injury to the plaintiff which flows from that which makes defendant's acts unlawful." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 76 (3d Cir. 2010) (quoting *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 429 (3d Cir. 1993)). "The goal of the antitrust injury requirement is 'that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place.'" *Jersey Asparagus Farms, Inc. v. Rutgers Univ.*, 803 F. Supp. 2d 295, 314 (D.N.J. 2011) (quoting *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 101 (3d Cir. 2010)). "As a general matter, the class of plaintiffs capable of satisfying the antitrust-injury requirement is limited to consumers and competitors in the restrained market, and to those whose injuries are the means by which the defendants seek to achieve their anticompetitive ends." *W. Penn*

*Allegheny*, 627 F.3d at 102 (citations omitted). Competitors must allege harm to competition, not just harm to the individual competitor.[2] *See Race Tires Am.*, 614 F.3d at 83.

Courts routinely dismiss antitrust claims when plaintiffs masquerade personal injury in the guise of an antitrust allegation. *See Matthews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996) ("An antitrust plaintiff must prove that the challenged conduct affected the prices, quantity or quality of goods or services, not just his own welfare" (internal quotation marks and citations omitted)). Undoubtedly, courts dismiss claims for lack of antitrust standing at the motion-to-dismiss stage. *Ragner Tech. Corp. v. Berardi*, 324 F. Supp. 3d 491, 508 (D.N.J. 2018); *TI Inv. Servs., LLC v. Microsoft Corp.*, 23 F. Supp. 3d 451, 455 (D.N.J. 2014); *McCullough v. Zimmer, Inc.*, No. 08-1123, 2009 WL 775402, at *9 (W.D. Pa. Mar. 18, 2009), *aff'd*, 382 F. App'x 225 (3d Cir. 2010).

Dr. Chagares fails to meet the standing requirement to bring his antitrust claim. Foremost, Dr. Chagares fails to allege that he was prevented from practicing and utilizing the RNSM technology elsewhere in the market. Indeed, one court in this Circuit tackled a similar issue. In *Untracht v. Fikri*, the plaintiff was a surgeon who lost his privileges to operate in two separate hospital systems because of safety concerns brought forth by the hospital administrators. 454 F. Supp. 2d 289, 295-98 (W.D. Pa. 2006), *aff'd,* 249 F. App'x 268 (3d Cir. 2007) (citations omitted). The plaintiff filed suit in federal court, alleging multiple claims including a Sherman Antitrust

---

[2] The factors to be employed in a standing analysis include: 1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause the harm, with neither factor alone conferring standing; 2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; 3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; 4) the "existence of more direct victims" of the alleged antitrust violations; and 5) the "potential for duplicative recovery or complex apportionment of damages." *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 537-45 (1983).

claim. *Id.* at 308. The court held that the plaintiff lacked standing for the antitrust claim because he was able to practice elsewhere. *Id.* at 309-10.

Likewise, Dr. Chagares does not adequately allege that he was shut out of the market. For example, the Amended Complaint makes no mention of efforts to practice at other hospitals. Nor does Dr. Chagares makes any allegation that he has been completely "shut out of the market by a purported group boycott," as required in other antitrust claims brought against hospitals. *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999); *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 878 (3d Cir. 1995). At this juncture, the Court cannot identify an injury for which the federal antitrust laws were intended to provide redress, because Dr. Chagares's Amended Complaint alleges a "personal injury in the guise of an antitrust allegation." *Marin v. Landgraf*, No. 11-690, 2013 WL 356623, at *8 (D.N.J. Jan. 29, 2013). The Court, accordingly, dismisses this claim.

### C.   State Law Claims

After dismissing Dr. Chagares's federal antitrust claims, only state law claims remain. Under 28 U.S.C. § 1367(c)(3), "[a] federal court may decline to exercise supplemental jurisdiction over state law claims when it dismisses all claims over which it has original jurisdiction." *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 567 (3d Cir. 2017). The Third Circuit directs that, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

Here, these factors warrant dismissal of the state law claims. Driving this Court's decision is the fact that the state court has efficiently managed discovery in this matter for over *two years*. (*See* Notice of Removal.) Conversely, the matter has only been before this Court for a few months.

The Court, accordingly, sees no efficiencies to starting afresh in federal court. Consequently, the Court declines to exercise supplemental jurisdiction and dismisses the rest of the state law claims. *Host Int'l, Inc. v. MarketPlace, PHL, LLC*, No. 19-02036, 2020 WL 4704939, at *6 (E.D. Pa. Aug. 13, 2020), *aff'd*, 32 F.4th 242 (3d Cir. 2022) (dismissing state law claim after finding no antitrust standing).[3]

## IV.    CONCLUSION

For the foregoing reasons, the Court denies Dr. Chagares's Motion to Remand and grants Defendants' Motion to Dismiss. An appropriate order will follow.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[3] The MMC Defendants recently filed a Third-Party Complaint. (ECF No. 20.) The Third-Party Complaint only asserts state law claims. The Court, likewise, declines to exercise supplemental jurisdiction over those claims too.